IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**UNITED STATES OF AMERICA,**

    **Plaintiff,**

  v.                                          CRIMINAL NO. 1:23-CR-12
                                                     (KLEEH)

**JAJA FITZPATRICK,**

    **Defendant.**

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is *Motion to Suppress Evidence* [ECF No. 21] filed by Defendant Jaja Fitzpatrick ("Fitzpatrick" or "Defendant") and *Report and Recommendation Recommending that Defendant's Motion to Suppress be Denied* [ECF No. 27] ("R&R"). Fitzpatrick filed objections [ECF No. 28] to the R&R [ECF No. 27]. For the reasons discussed herein, the R&R is **ADOPTED**, the motion is **DENIED,** and the objections are **OVERRULED.**

**I.   FACTS**

The Court finds the following facts based on the testimony presented during the suppression hearing.[1] On January 22, 2020, state law enforcement applied for and obtained a search warrant for a residence located at 602 Luke Street, Apt. 10, Morgantown, West Virginia, from a local magistrate judge. The search warrant indicated that law enforcement officers were looking for cocaine,

---

[1] The Magistrate Judge convened a hearing on the motion to suppress on September 15, 2023.

heroin, and other controlled substances; paraphernalia; firearms/ammunition; and other items/evidence related to the possession and sale of controlled substances. ECF No. 21-1, Affidavit.

The search warrant affidavit prepared by Captain James Beatty ("Capt. Beatty") was six pages in length. Id. at pp. 5-10. It described the Mon Metro Drug Task Force's ("Task Force") investigation beginning on January 3, 2019. The Task Force was conducting surveillance of a residence located at 641 Brockway Avenue, Morgantown, West Virginia, upon receiving an anonymous tip about drug distribution activity. Officers observed a large black male meet a suspected drug customer before leaving in a vehicle. The officers conducted an investigatory stop and discovered the driver was the Defendant, Jaja Fitzpatrick.

Five days later, Task Force officers conducted an interview of the drug customer ("CI1"). CI1 knew Fitzpatrick as a heroin dealer with Thompson – an individual the Task Force was already investigating - and others. CI1 also knew that Defendant utilized a cellular phone to maintain contact with his customers.

On January 6, 2019, a person known to the investigation as CI5 was interviewed and corroborated much of CI1's information that later became known to the Task Force on January 8, 2019. Fitzpatrick and others were involved in a drug distribution

conspiracy that sold out of a residence located at 641 Brockway Avenue, Morgantown, West Virginia, and Fitzpatrick used his cell phone to conduct drug business.  Later that month on January 25, 2019, the Task Force executed a search warrant at 641 Brockway Avenue but did not encounter any residents, only evidence that methamphetamine and heroin were being distributed from the residence.  The Task Force also located documents identifying two known co-conspirators, Hudson and Thompson.

On April 12, 2019, Task Force officers were conducting surveillance at a different residence, 305 High Street, because they learned the conspiracy members had moved.  During the surveillance, Task Force officers observed Fitzpatrick leave the residence and travel to 602 Luke Street, Apartment 10, Morgantown, West Virginia. Fitzpatrick entered the residence.

Two days later, co-conspirator Hudson shot a female at a nightclub in Morgantown and returned to 305 High Street after the shooting.  On April 24, 2019, the Task Force executed a search warrant at the High Street residence and discovered Hudson and Thompson present.  Neither Fitzpatrick nor Nelson, another co-conspirator, were present.  The Task Force officers found evidence of drug distribution and the firearm used by Hudson to commit the April 14, 2019 shooting.

**MEMORANDUM OPINION AND ORDER**

In May 2019, the Morgantown Police Department was investigating a robbery of a Sprint Cellular phone store on High Street and learned that Nelson was involved. Nelson is wanted for these allegations.

Beginning on June 12, 2019, Task Force officers interviewed three individuals who corroborated CI1's and CI5's January 2019 information. First, the Task Force interviewed a person known as CI2 who stated that Fitzpatrick and another co-conspirator, known as Alex, were a source of heroin in the Morgantown area. They had been selling from multiple residences in Morgantown, including from known heroin dealer Eric Riffle's Pennsylvania Avenue residence. CI2 confirmed Fitzpatrick uses a cell phone to conduct his drug business. On July 22, 2019, CI3 informed the Task Force that Fitzpatrick was a heroin source for the area and confirmed Fitzpatrick uses a cell phone to conduct his drug business. On August 23, 2019, CI4 informed the Task Force that Fitzpatrick was a source of heroin and uses a cell phone to conduct his drug business.

On September 19, 2019, Task Force officers spoke with CI5 again, who confirmed Fitzpatrick was still selling heroin near Pennsylvania Avenue but was living in the Fairmont, West Virginia, area to avoid detection. CI5 gave the Task Force officers Fitzpatrick's cell phone number ending in 3504.

**MEMORANDUM OPINION AND ORDER**

On November 17, 2019, the Morgantown Police Department was investigating a shooting that occurred at the intersection of Chestnut and Wall Street in Morgantown. Video surveillance and witness statements identified Fitzpatrick as the person who shot the victim. At the time of the instant warrant application in January 2020, Fitzpatrick was still wanted by police for wanton endangerment and malicious wounding from the allegations of the November 17, 2019 shooting.

Task Force officers followed up with CI5 on November 22, 2019, who stated that Fitzpatrick had been driving a white Nissan and a light-colored Ford in recent weeks and was still selling heroin, along with crystal meth and cocaine. CI5 witnessed Defendant sell crystal meth to a female near 602 Luke Street earlier that month. Fitzpatrick was using the same cell phone number and was staying in the 602 Luke Street apartment. CI5 explained Fitzpatrick does not meet buyers in the apartment.

During that interview, CI5 explained that Fitzpatrick contacted CI5 from a new number ending in 8270. CI5 also confirmed Fitzpatrick is known to carry a firearm and that he saw a pistol in Defendant's vehicle during the summer of 2019. On November 25, 2019, a Task Force officer met with CI5 to witness a recorded phone call to Fitzpatrick to the number ending in 8270. During the call, Fitzpatrick agreed to sell and CI5 agreed to purchase a quantity

of heroin.  Fitzpatrick appointed Nelson, however, to deliver the drugs.  At the time of the meeting, Nelson met CI5 with the heroin, and after the sale, Nelson drove to 602 Luke Street and parked in front of apartment 10.  One day later, the Task Force officers obtained phone records of the number ending in 8270.  The records show coordination between the sender and known drug addicts.  On December 5, 2019, the Task Force made an arrest of Nelson during a traffic stop and found him in possession of heroin and crack.

In early January 2020, the Morgantown Police Department requested assistance from the United States Marshal Service to apprehend Fitzpatrick.  On January 12, 2020, a Task Force officer received information from CI5 that Fitzpatrick had returned to Morgantown for the purpose of selling cocaine base and heroin, and that he was staying in an apartment on Luke Street.  This address belonged to Mara Davison and became the subject of the search warrant application, specifically 602 Luke Street, Apartment 10.

On January 22, 2020, Deputy United States Marshal ("DUSM") McCarty told the Task Force the GPS location of Fitzpatrick's cell phone was 602 Luke Street at 10:30 a.m. that day.  Based upon these facts, Capt. Beatty applied for a warrant to search 602 Luke Street, Apartment 10.

Capt. Beatty confirmed the state magistrate judge reviewed the affidavit he prepared. Beatty Tr. 9:30-9:31. The magistrate

judge signed the search warrant. Id. Nothing beyond the information contained in the search warrant was given to the state magistrate judge. Id. 9:31-9:32. Capt. Beatty was placed under oath at the time he presented the document to the magistrate judge. Id.

During the search on January 22, 2020, police seized a 9 mm pistol from a storage unit which led to the subject one-count Indictment returned against Fitzpatrick for Unlawful Possession of Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8). Fitzpatrick moves to suppress the evidence seized from the search, arguing that the search was unconstitutional.

## II.  STANDARD OF REVIEW

When reviewing a magistrate judge's R&R, the Court must review de novo only the portions to which an objection has been timely made. 28 U.S.C. § 636(b)(1)(C). Otherwise, "the Court may adopt, without explanation, any of the magistrate judge's recommendations" to which there are no objections. Dellarcirprete v. Gutierrez, 479 F. Supp. 2d 600, 603-04 (N.D.W. Va. 2007) (citing Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983)). Courts will uphold portions of a recommendation to which no objection has been made unless they are clearly erroneous. See Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005).

### III. DISCUSSION

Considering the totality of the circumstances, it is clear probable cause supported the search warrant and was therefore within the bounds of the Fourth Amendment to the U.S. Constitution. Nevertheless, even if the evidence supporting the affidavit was stale, the Leon good faith exception renders the search constitutionally permissible.

**A. Applicable Law**

The Fourth Amendment to the United States Constitution provides,

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

Probable cause to search a home exists if there is a fair probability that evidence of a crime is located within the residence. See Illinois v. Gates, 462 U.S. 213, 238 (1983). Probable cause "does not require officers to rule out a suspect's innocent explanation for suspicious facts." United States v. Bosyk, 933 F.3d 319, 327 (4th Cir. 2019) (citation omitted).

"When reviewing the probable cause supporting a warrant, a reviewing court must consider only the information presented to the magistrate who issued the warrant." United States v. Wilhelm,

80 F.3d 116, 118 (4th Cir. 1996) (citing United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990)). The Court then applies a "'totality-of-the-circumstances' test to determine whether probable cause supported a search warrant." Id. (citing Gates, 462 U.S. at 238).

### B. The evidence supporting the search warrant was not stale.

Defendant objects to the R&R's finding that the evidence supporting the subject search warrant is not stale. See ECF No. 28 at pp.3 ("Fitzpatrick takes issue with the magistrate court characterizing these facts as a 'relatively brief lull in the investigation.' R&R, page 9"); Id. at pp. 4 ("Fitzpatrick objects to the R&R, page 11, finding that this 'period of inactivity in the investigation from November 2019 to January 2020 is of no moment.'"). However, as correctly observed in the R&R, probable cause can still exist throughout an ongoing criminal investigation, even when there are gaps between the observed illegal conduct and the issuance of the warrant. United States v. McCall, 740 F.2d 1331, 1336 (4th Cir. 1984).

"Evidence received from a warrant that relies on stale information is not admissible in a trial to establish a defendant's guilt." United States v. Bolling, No. CR 2:21-00087, 2023 WL 5616188, at *9 (S.D.W. Va. Aug. 30, 2023) (citing McCall, 740 F.2d at 1336). "A valid search warrant may issue only upon allegations

of 'facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause at that time. Whether the proof meets this test must be determined by the circumstances of each case.'" McCall, 740 F.2d at 1335-36 (internal citations omitted). "Although there is no question that time is a crucial element of probable cause, [ ] the existence of probable cause cannot be determined by simply counting the number of days between the occurrence of the facts supplied and the issuance of the affidavit." United States v. Richardson, 607 F.3d 357, 370 (4th Cir. 2010) (internal quotation marks omitted). Rather, the Court "must look to all the facts and circumstances of the case, including the nature of the unlawful activity alleged, the length of the activity, and the nature of the property to be seized." McCall, 740 F.2d at 1336.

A warrant's validity may be suspect if its supporting information is stale — "too old to furnish 'present' probable cause." Id. When making such a consideration, a court "must determine whether information sufficient to constitute probable cause was ever presented." Id. However, the Fourth Circuit has recognized that "[f]indings of staleness become less appropriate when the instrumentalities of the alleged illegality tend to be retained." United States v. Crowffey, 183 Fed. Appx. 249, 250 (4th Cir. 2006) (unpublished); United States v. Farmer, 370 F.3d

435, 439-40 (4th Cir. 2004) (holding that evidence was not stale even though events supporting probable cause took place nine months before search warrant was issued).

Here, Defendant argues that the information supporting the warrant was stale because the information "directly implicating" Defendant in drug dealing was six weeks old. ECF No. 28. Thus, Defendant contends that the information CI5 provided in January 2020 was insufficient to support probable cause. The Court is not persuaded by this argument.

Looking at all of the facts and circumstances of the Task Force's investigation, it is clear that the January 22, 2020, search was supported by probable cause. CI5's tip that Defendant returned to Morgantown to sell drugs and was staying at an apartment on Luke Street was not the first mention of the Luke Street apartment in the investigation. Rather, Defendant had been repeatedly connected to the Luke Street apartment during the Task Force's year-long investigation and Defendant was previously known to have returned to the apartment following alleged drug sales. Viewing the length of the investigation in its totality, the brief period of inactivity does not defeat probable cause. Furthermore, the Task Force did not rely only on CI5's tip and the historical knowledge of Defendant's connection to 602 Luke Street. Rather, the Task Force utilized GPS location tracking to confirm

Defendant's cell phone location at the apartment and corroborate the tip on January 22, 2020.

The length of the investigation, coupled with the multiple connections to the Luke Street apartment support that the previously obtained evidence between January and November 2019 was still relevant at the time the search warrant was ultimately executed. Thus, Defendant's objections on this ground are **OVERRULED** and the warrant was supported by probable cause.

**C. Nonetheless, the Leon good faith exception applies.**

The "good faith" exception may sometimes apply to salvage a defective warrant. See United States v. Leon, 468 U.S. 897, 922 (1984). In Leon, the Supreme Court held that the exclusionary rule does not bar admission of evidence obtained when officers acted in objectively reasonable reliance on a search warrant that was ultimately found to be invalid. Id. "Leon teaches that a court should not suppress the fruits of a search conducted under the authority of a warrant, even a 'subsequently invalidated' warrant, unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'" United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002) (citing Leon, 468 U.S. at 922 n.23).

There are four situations, however, in which the Leon good faith exception will not apply:

> (1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;"
>
> (2) if "the issuing magistrate wholly abandoned his judicial role in the manner condemned in Lo-Ji Sales, Inc. v. New York, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979)";
>
> (3) if the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and
>
> (4) if under the circumstances of the case the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid."

See United States v. Doyle, 650 F.3d 460, 467 (4th Cir. 2011) (quoting United States v. DeQuasi, 373 F.3d 509, 519–20 (4th Cir. 2004)).

With respect to the third Leon exception, the Fourth Circuit has found that when an affidavit is "bare bones," it is not salvageable under Leon. See Wilhelm, 80 F.3d at 121. A "bare bones" affidavit is one that contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." Id. Here, Defendant argues that the affidavit is a bare bones affidavit because no reasonable police officer would believe CI5's January

2020 tip would create probable cause. ECF No. 28. The Government, on the other hand, argued that there was sufficient information for the magistrate to determine the existence of probable cause including multiple statements by the informants, law enforcement observations, and other corroborating tips about Defendant.

Defendant's second objection and argument fails for several of the reasons laid out previously. Even if the warrant was not supported by probable cause, it would be salvaged by the Leon good faith exception.  Law enforcement acted in objectively reasonable reliance on the search warrant.  Further, no exception to the Leon good faith exception applies.  The information contained in the affidavit is not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. The affidavit [ECF No. 21-1] provides support for the search warrant based upon Capt. Beatty's observations and experience as an officer for over 27 years; multiple accounts of incidents involving Defendant and his associates engaged in illegal activity including drug distribution; and connections to the Luke Street apartment, amongst other things.  At six pages in length, the affidavit is not bare bones; it would be reasonable for an officer to believe that, together, all these facts gathered during the yearlong investigation created probable cause to search 602 Luke Street and seize the items in the warrant.

**MEMORANDUM OPINION AND ORDER**

For these reasons, the Court **OVERRULES** Defendant's objection and finds the Leon good faith exception would apply to save the warrant, had it been defective.

### IV.   CONCLUSION

For the reasons discussed, the Court **OVERRULES** Defendant's objections to the R&R [ECF No. 28]; **ADOPTS** the R&R in its entirety [ECF No. 27]; and **DENIES** Defendant's motion to suppress [ECF No. 21].

It is so **ORDERED**.

The Clerk is **DIRECTED** to transmit copies of this Memorandum Opinion and Order to counsel of record and all appropriate agencies.

**DATED**: January 3, 2024

*Tom S Kleeh*

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA